John H. Lawson, Appellee, v. Nishan Bartev Jorjorian, Appellant.

Gen. No. 39,759.

432

Opinion filed January 31, 1938.

DONALD M. ROCHE and ABRAHAM LEPINE, both of Chicago, for appellant.

PAUL F. KINNARE, of Chicago, for appellee.

MR. JUSTICE MATCHETT delivered the opinion of the court.

On May 29, 1935, in the village of Wilmette at the intersection of Greenwood avenue and 16th street, the Packard automobile of plaintiff was struck by another Packard driven by the defendant, Jorjorian. Plaintiff's automobile at the time in question was being driven by his wife, Mrs. Lawson, and a friend, Mrs. Harbison, sat in the seat with her at the right-hand side. Plaintiff brought suit before a justice of the peace for damage sustained by the automobile and obtained judgment. Defendant appealed to the circuit court where the cause was again tried by the court without a jury. At the conclusion of all the evidence there was a finding for plaintiff for $175 with judgment thereon, and defendant brings this further appeal to this court.

Greenwood avenue in the village of Wilmette is a public east and west highway; it is intercepted by 16th street, another public highway running north and south. At this particular intersection, however, 16th street jogs to the west, as the evidence shows, about 17 feet. The land about the intersection was vacant and unoccupied at the time in question; there was one house on the east side of 16th street about 100 feet south of the intersection. The northeast corner of the intersection was covered by weeds, which the evidence

indicates were from 4 to 5 feet in height. Both streets at this place are approximately 22 feet wide. It was a clear day and the street was dry. Mrs. Lawson, driving plaintiff's car, turned from Green Bay road into Greenwood avenue and proceeded in a westerly direction. She says that as she approached the intersection she looked to the north but did not see any traffic coming. Mrs. Lawson and Mrs. Harbison both testify that the Lawson car was being driven at a speed of from 20 to 25 miles an hour. When Mrs. Lawson had driven the car more than half way across the intersection defendant, driving his Packard at an undetermined speed, which Mrs. Harbison says was greater than that at which the Lawson car was going, hit the Lawson car, striking the right-front fender, scraping the running board and badly damaging the body of the car. The impact drove the Lawson car about 50 feet south, where it stopped. Just as the cars were about to collide Mrs. Lawson turned her car toward the left and the defendant swung his to the right in order to avert the collision. No occupant of either car was injured but the automobiles were badly damaged. It is not claimed that the damages are excessive.

Defendant testified that when he approached the intersection he first looked to the right to see if there was any traffic; he did not see any; he looked to his left, and as he says, was "just going into the intersection and I had crossed over the north curb of Greenwood avenue when I saw the other car coming to my left there." He says it was then too late for him to do much, so he swung his car to the right while the car coming from the east also turned to try to avoid him, and the front right fender on the Lawson car struck right into his car and the impact of it swung his car around and brought him across the southwest curb. He got out of the car and met Mrs. Lawson halfway

between the two cars; he asked if she was hurt and she asked if he was hurt; it appeared that everybody was all right; they exchanged their license numbers, names and addresses; by that time people had begun to gather around and he did not see Mrs. Lawson after that. A garage company came and took his car away. Mrs. Lawson testified (and defendant does not deny) that she said to defendant, " 'I did not see you coming.' I said, 'Didn't you see me?' He said, 'No.' And I asked him why. Well, he said just before he reached the intersection his door opened, his front, right front door, and he leaned over to close his door and he did not see me and I did not see him."

On cross-examination defendant was asked what distance he was north of the intersection when he opened the left-front door of his car. His attorney interposed the statement that the testimony was his right-front door was open. The attorney for plaintiff then said: "Q. You heard the statement here made about you having opened and closed the door. Did you do that? A. *Yes, I did.* Q. Where were you from the intersection when that happened? A. I was, oh, about I should judge, about half way the distance from here across the street. I would say about 75 feet or so. Q. Did that have anything at all to do with your—— The Court: Don't ask 'him that. Mr. Lepine: Q. When this occurred, you closed the door before you reached the intersection? A. Oh, yes. Q. At the time you reached the intersection were you looking at your door? A. No, sir, I was not." Defendant was asked: "Q. Which door of the car came open before you reached the intersection? A. The right front. Q. Did you open it or did it come open itself? A. No, it was not — it was not open, in fact. You know there is a double latch on the Packard door and just the one latch was open, that is all. Q. What did you do then? A. I reached over and shut it.

Q. Do you remember having a conversation with Mrs. Lawson after the accident; do you remember her saying, 'Why didn't you see me?' and do you remember what you said? A. *No, I am sorry, I don't.* Q. Do you remember when this case was tried before a J. P. and you were on the stand that I asked you, 'Did you tell Mrs. Lawson after the accident that you did not see her because your right front door came open?' and you said, 'Yes'? Do you remember that question being asked and that answer being made? A. *No; I don't remember.*"

Defendant insists that the judgment should be reversed because as a matter of law the driver of plaintiff's car was guilty of contributory negligence in failing to observe the approach of defendant's car and in failing to yield the right of way to the defendant. It is argued that although Mrs. Lawson testified that she looked to her right before proceeding across the intersection, it is evident under all the circumstances that she did not look because if she had looked she must have seen, and cases such as *Greenwald v. Baltimore & O. R. Co.,* 332 Ill. 627–632 are cited to the effect that law will not give credence to testimony that one looked but did not see, when it is perfectly apparent that if the person had looked he must have seen. As to the contention of defendant that the driver of plaintiff's car was guilty of contributory negligence in failing to yield the right of way, defendant cites *Partridge v. Eberstein,* 225 Ill. App. 209, and *McCarthy v. Fadin,* 236 Ill. App. 300, while plaintiff relies upon *Heidler Hardwood Lumber Co. v. Wilson & Bennett Mfg. Co.,* 243 Ill. App. 89, and *Ward v. Clark,* 232 N. Y. 195, with other cases. Section 33 of the motor vehicle law provides in substance that persons traveling upon the public highways shall give the right of way to other vehicles approaching along intersecting highways from the right, and that such persons shall have the

right of way over those approaching from the left. This court is of the opinion that under the circumstances disclosed by the evidence, the driver of plaintiff Lawson's car was guilty of contributory negligence in failing to yield defendant the right of way, and that plaintiff therefore cannot recover. The cars were traveling at about the same rate of speed and were practically equidistant from the point of collision. *Ward v. Clark, supra.* Plaintiff, however, argues that Mrs. Lawson, the driver, was a mere bailee of the automobile of her husband, and that he therefore may not be charged with her contributory negligence. A bailor, says plaintiff, cannot be held responsible for the negligence of his bailee in the absence of proof of the relationship of master and servant or principal and agent between the owner and the bailee. *Mosby v. Kimball,* 345 Ill. 420; *Arkin v. Page,* 287 Ill. 420; *White v. Seitz,* 342 Ill. 266, and *Andersen v. Byrnes,* 344 Ill. 240, are cited. This contention is presented for the first time in this court. In the trial court the agency of Mrs. Lawson for her husband was assumed. That relationship is presumed in the absence of evidence to the contrary. *Bosco v. Boston Store of Chicago,* 195 Ill. App. 133; *Robeson v. Greyhound Lines, Inc.,* 257 Ill. App. 278. Moreover, plaintiff cannot try his case on one theory and adopt another on appeal. *Ziolkowski v. Continental Casualty Co.,* 263 Ill. App. 31; *Remington v. Krenn & Dato, Inc.,* 289 Ill. App. 548; *Hayward Co. v. Lundoff-Bicknell Co.,* 365 Ill. 537; *National Lock Co. v. Swords Co.,* 290 Ill. App. 42.

It is further contended that the judgment of the trial court will not be disturbed because, as it is said, it does not appear from the certificate of the trial judge that the record contains all the evidence offered at the trial. Plaintiff cites *Emerson v. Clark,* 2 Scam. 489; *Cogshall v. Beesley,* 76 Ill. 445; *Marske v. Willard,* 68 Ill.

App. 83; *Culliner v. Nash,* 76 Ill. 515; *Legnard v. Rhoades,* 156 Ill. 431; and *Estate of Casner v. Stafford,* 86 Ill. App. 469. The contention cannot prevail on this record. The certificate itself does not state that it contains all the evidence, but on the last page of the proceedings, which the certificate certifies to be correct, the statement is made, ''which was all of the testimony offered, received or adduced and all of the proceedings had at the trial of the above entitled case.'' This is sufficient. *People v. Clark,* 298 Ill. 170; *Sutton & Routt v. Board of Education,* 259 Ill. App. 193.

For the reasons indicated the judgment is reversed.

*Reversed.*

O'CONNOR, P. J., and McSURELY, J., concur.